UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                                    Chapter 11

OAKTREE OCALA JV, LLC and
ASAP HIGHLINE OCALA, LLC                                               Case No. 25-22701 (SHL)

                                             Debtors.

-------------------------------------------------------------x

## MEMORANDUM OF DECISION GRANTING
## THE DEBTORS' APPLICATION TO EMPLOY LOGS LEGAL GROUP LLP AS
## SPECIAL COUNSEL

**A P P E A R A N C E S:**

**WHITEFORD TAYLOR & PRESTON, LLP**
*Counsel for Debtors, Oaktree Ocala JV, LLC and ASAP Highline Ocala, LLC*
444 Madison Avenue
New York, NY 10022
By:    Kenneth M. Lewis, Esq.

**DUANE MORRIS LLP**
*Counsel for CPIF MRA, LLC*
30 South 17th Street
Philadelphia, PA 19103
By:    Lawrence J. Kotler, Esq.
         Drew S. Mcgehrin, Esq.

**UNITED STATES DEPARTMENT OF JUSTICE**
*Counsel for the United States Trustee*
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004
By:    Tara Tiantian, Esq.

**KIRBY AISNER & CURLEY LLP**
*Counsel for Fallen Oak Holdings LLC*
700 Post Road
Scarsdale, NY 10583
By:    Erica Feynman Aisner, Esq.

**STEIN ADLER DABAH & ZELKOWITZ LLP**
*Counsel for Mark Wiederman and Saul Horowitz*
936 Broadway
New York, NY 10010
By:    Jacob Lewin, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Oaktree Ocala JV, LLC ("Oaktree") and ASAP Highline Ocala, LLC ("ASAP" and, together with Oaktree, the "Debtors") *Application of the Debtors for Entry of an Order, Pursuant to Section 327(e) of the Bankruptcy Code, Authorizing the Retention and Employment of Logs Legal Group LLP as Special Counsel to the Debtors and Debtors in Possession* (the "Application to Employ") [ECF No. 30].[1]  William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee" or the "UST") has lodged an objection to the Application to Employ (the "Objection") [ECF No. 33], and Debtors filed a reply (the "Reply") [ECF No. 35].  The matter was argued before the Court on August 27, 2025 [ECF No. 51].

The dispute here centers on whether retention of Logs Legal Group LLP ("LOGS") is proper under Section 327(e) instead of Section 327(a), and whether Logs fails to satisfy the applicable conflict-of-interest requirement under either Section 327(a) or Section 327(e).  *See generally* Objection, Reply.  For the reasons set forth below, the UST's Objection is overruled and the Application to Employ is granted.

## BACKGROUND

The facts underlying the instant dispute are not contested.  On July 29, 2025 (the "Petition Date"), Debtors commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code.  *See* Application to Employ ¶ 1.  Debtor ASAP owns and operates a mobile home/RV park known as Oaktree Village/Greentree Estates, located in Ocala, Florida.  Declaration of Raphael C. Milsten Pursuant to Rule 1007-2, ¶ 3 [ECF No. 2].  Oaktree, which is

---

[1]    Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Bankruptcy Case No. 25-22701.

2

a holding company, is the sole member of ASAP. *Id.* ¶ 4. In 2022, ASAP purchased 46.79 acres of real property in Ocala, Florida (the "Property") for $15 million, with the property consisting of 140 double-wide manufactured homes and 221 residence/multifamily apartment units and amenities. *Id.* ¶ 5. The Property was purchased with financing from CPIF MRA, LLC ("CPIF") with some of the financing intended to go to capital improvements to the Property. *Id.* ¶ 6. As security on its loan, CPIF was granted a lien on the Property and on Oaktree's membership interest in ASAP. *Id.* at ¶¶ 6, 7.

Debtors seek to retain LOGS as special counsel pursuant to Section 327(e) of the Bankruptcy Code. *Id.* at ¶ 4. Prior to the Petition Date, LOGS represented the Debtors in litigation commenced by secured lender CPIF in the Circuit Court of the Fifth Judicial Circuit in Marion County, Fl (No. 2024-CA-002372 (3-C)) (the "Foreclosure Litigation"). *Id.* at ¶ 5. In the Foreclosure Litigation, the Debtors filed counterclaims against CPIF. *Id.* The Debtors request that LOGS be retained as special counsel to continue to represent them with respect to the resolution of the applicable claims and counterclaims in the Foreclosure Litigation. *Id.* at ¶ 6.

Not surprisingly, Debtors' largest creditor in the instant bankruptcy case is CPIF, who is represented by Duane Morris LLP in matters regarding CPIF's loans and mortgages with Debtor ASAP, including the Foreclosure Litigation. Objection at ¶¶ 4-7. As it so happens, Duane Morris LLP also represents LOGS in an unrelated lawsuit pending for the Eastern District of New York, styled *Barbara Small v. LOGS Legal Group LLP f/k/a Shapiro, DiCaro & Barak, LLC*, Case No. 1:25-1384-MKB-JAM (the "EDNY Lawsuit"); that class action lawsuit alleges LOGS and others of, *inter alia*, deceptive practice, negligence, and legal malpractice, claims that the Debtors purport are unrelated to the Debtors and the instant case. *Id.* at ¶¶ 12, 16; Application to Employ at ¶ 8.

## DISCUSSION

In its Objection, the UST argues that (1) LOGS must be retained under Section 327(a) as general bankruptcy co-counsel and not under Section 327(e) as special counsel due to LOGS' central role in this case; (2) LOGS cannot zealously represent the Debtors against CPIF/Duane Morris LLP by virtue of the EDNY Lawsuit; (3) the claims asserted against LOGS in the EDNY Lawsuit create a conflict for LOGS because they are at odds with the type of work LOGS would perform in this case; and (4) LOGS' conflict search is incomplete. Objection at 5-12. Following the filing of the Objection, LOGS filed a supplemental declaration [ECF No. 49] addressing the deficiencies raised by the UST regarding LOGS' conflict search. Supplemental Declaration. The Court finds LOGS' updated conflict search is sufficient and will next consider the UST's remaining objections in turn.

A. **The Legal Standards Applicable to Retention and Compensation of Professionals**

Section 327(a) of the Bankruptcy Code provides that:

> [e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Regarding applications to retain special counsel, Section 327(e) allows a debtor to:

> employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

The plain language of Section 327(e) makes it clear that a trustee "may employ [counsel], for a specified special purpose, other than to represent the trustee in conducting the case...." *In*

4

*re Roper & Twardowsky, LLC*, 566 B.R. 734, 750 (Bankr. D.N.J. 2017) (quoting 11 U.S.C. § 327(e)). "Case law examining this quoted portion of the statute is limited." *Id.* A survey of available case law "illustrates a pattern where courts have refused to authorize the employment of special counsel—whose services would overlap with those customarily reserved for general bankruptcy counsel—regardless of how much familiarity with and understanding of the debtor's affairs special counsel brings to the case." *Id.* (citing *In re Neuman*, 138 B.R. 683, 686 (S.D.N.Y. 1992)) ("appointment of special counsel to assist the trustee in determining the allowable amount of a claim was improper"); *In re Hempstead Realty Assocs.*, 34 B.R. 624, 625 (Bankr. S.D.N.Y. 1983) ("retention of special counsel to provide debtor broad legal services including basic legal advice with respect to its powers and duties as a debtor-in-possession, the preparation of applications, answers, orders, reports, etc., and assistance in preparing a plan of arrangement was improper"); *In re S. Shore Golf Club Holding Co., Inc.*, 182 B.R. 94, 95 (Bankr. W.D.N.Y. 1995) ("retention of special counsel to prepare a disclosure statement and plan of reorganization was improper"); *In re Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 227-28 (Bankr E.D. Va. 1989) ("retention of special counsel to advertise and negotiate proposals for the sale or reorganization of the debtor's primary asset, including assisting the debtor with its plan of reorganization was improper").

The crux of UST's Objection is that LOGS should be employed under Section 327(a) because its representation of the Debtors in the dispute with CPIF would essentially be tantamount to conducting the bankruptcy case on behalf of the Debtors. Objection at 1. This requires the Court to consider the exact scope of LOGS' proposed representation.

1. <u>LOGS' Proposed Representation</u>

The UST asserts that because LOGS is engaged to address the Debtors' most significant creditor and thus the claims that will be resolved through this bankruptcy, LOGS will play a

5

central role in the reorganization and essentially be serving as debtors' counsel, rendering representation pursuant to Section 327(e) inappropriate. Objection at 8; *see* Milstein Rule 1007-2 Decl., ¶¶ 25-26 (CPIF asserted secured claim of $14.2 million, and Marion County Tax Collector asserted secured claim of $235,301.60) [ECF No. 2]; Official Form 204 (lists top 20 unsecured claims totaling a little over $100,000) [ECF No. 2-1]. In support of its proposition, the UST cites *In re Neuman*, where the court noted that although proposed special counsel's role was framed as being for a special purpose—addressing one claimant and one type of claim—the overarching investigation of the claim constituted a large part of conducting the bankruptcy case and no "special purpose" existed other than representing the trustee in conducting the case. *See* 138 B.R. 683, 684 (S.D.N.Y. 1992).

But the Court disagrees. While there is little question that resolution of CPIF's claims is important to the Debtors' underlying Chapter 11 case, the scope of LOGS' retention application is limited to continuing representation of the Debtors in the existing Foreclosure Litigation to a resolution. Application to Employ at ¶ 6. Such representation is precisely what Congress intended in drafting Section 327(e). *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3706, at *9-10 (Bankr. S.D.N.Y. August 10, 2012) ("The legislative history of [S]ection 327(e) states that it 'will most likely be used when the Debtor is involved in complex litigation and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation.'") (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 328 (1977), U.S. Code Cong. & Admin. News 1977, p. 5963; S. Rep. No. 989, 95th Cong., 2d Sess. 38-39 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787). Furthermore, the UST's reliance on *Neuman* is misguided. The court in *Neuman* expressly recognized that in a typical Section 327(e) appointment, "special counsel is employed in litigation that would have

6

the effect, if successful, of increasing or preserving the estate's assets for *all* pre-petition creditors." 138 B.R. at 686 (emphasis in original). This is exactly the type of appointment Debtors request in the instant case, and no party asserts that only a limited number of creditors are benefitted by LOGS' retention. *See generally* Objection.

Moreover, it is undisputed that LOGS is not involved in advising the Debtors on their operations while in bankruptcy or formulating the end game of this Chapter 11 case. At the hearing on the Application to Employ, Debtor's counsel at Whiteford Taylor made clear that he is responsible for all the things that debtor's counsel normally does in a Chapter 11 case, including "working closely with the debtor with respect to its business plan,…exit strategies,…whether there will be a refinancing,…and, most importantly, ultimately coming up with that final business plan and plan of reorganization." Transcript of Hearing, dated Aug. 27, 2025, at 18:22-19:3 [ECF No. 51]. By contrast, proposed counsel at LOGS made clear that such tasks were not part of his role:

> So, Your Honor, I am a real estate litigation attorney licensed in the state of Florida. That's all I do. I am not a bankruptcy lawyer. I was hired to defend a foreclosure case and [bring] counterclaims. That's my specialty. I don't want to be a bankruptcy lawyer in this case.

*Id.* at 25:8-13.

For all these reasons, the Court finds the limited scope of representation of LOGS in this case qualifies LOGS for retention under Section 327(e).

**B. Whether LOGS Qualifies for Retention Despite Alleged Conflicts**

Having determined LOGS role on counsel in the case, the Court next considers whether LOGS can zealously represent the Debtors against CPIF/Duane Morris LLP by virtue of the EDNY Lawsuit. In evaluating an application to employ special counsel, the Second Circuit has held that "any potential conflicts must be evaluated only with respect to the scope of the

7

[proposed] retention." *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 622 (2d. Cir. 1999). Determining whether an attorney should be retained under Section 327(e) must be made on a case-by-case basis, and where "the interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained[,]" there is no conflict and the representation can stand. *In re Residential Capital,* 2012 Bankr. LEXIS 3706, at *9-10 (quoting *In re AroChem Corp.*, 176 F.3d at 622).

The UST asserts that because LOGS will primarily interact with Duane Morris LLP as counsel to CPIF, doubt has been cast on whether LOGS can zealously advocate and litigate vigorously against a firm that represents LOGS in other litigation. Objection at 9-10. However, that is not the standard for retention of special counsel. Rather, the question is whether the interest of special counsel and the interest of the estate are identical as to the matter for which special counsel is retained. *In re AroChem Corp.*, 176 F.3d at 622. The UST does not present any facts that demonstrate that Debtors' and LOGS' interests are not aligned. Instead, the UST suggests that the EDNY Lawsuit creates a perceived risk that LOGS' professional judgment on behalf of the Debtors will be somehow impaired by virtue of the pending claims related to LOGS' mortgage and loan work in the separate EDNY matter. Objection at 10-11. Put differently, the UST asserts that the existence of a pending lawsuit calls into question whether a lawyer can provide a client with detached advice. *Id.* (citing New York Rules of Professional Conduct, R 1.7, cmt 10 (2025)). "However, interests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Cos.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) (citing *TWI International, Inc. v. Vanguard Oil and Service Co.*, 162 B.R. 672, 675 (S.D.N.Y. 1994) ("conflicts that are 'hypothetical or theoretical' not a basis for disqualification")). An unresolved pending lawsuit is

8

representative of unproven claims awaiting actual disposition and thus cannot create a conflict itself, absent concrete facts relating the suit to the instant bankruptcy case. *See*, *e.g.*, *In re AroChem Corp.*, 176 F.3d at 623 (noting that Congress' use of present tense in Section 327(a) means counsel will be disqualified if it presently holds or represents an interest adverse to the estate). Finally, the UST also maintains that the tenor of the allegations against LOGS in the EDNY Lawsuit somehow is a bar to LOGS acting here as a fiduciary. But the UST presents no authority for the proposition that such unproven allegations—which are entirely unrelated to the Debtors—provide a basis to bar the proposed representation here.[2] As no showing has been made that there is a connection between the EDNY Lawsuit and LOGS' role in the Foreclosure Litigation, the Court overrules the UST's Objection for all the reasons explained above.

## CONCLUSION

For all the reasons set forth above, the Court overrules the Objection and approves the Application to Employ. The Court will enter an order consistent with this Decision.

Dated: White Plains, New York
      October 2, 2025

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE

---

[2] In the EDNY Lawsuit, the plaintiff sued a number of firms and banks alleging that they intentionally miscalculated the amount of interest awarded in her state court foreclosure case. *See* Supp. Decl. of Ronald M. Gaché [ECF No. 35-1].